**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| GREGORY TODD BOWDEN, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:09-CR-0098-WSD-RGV-1 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:12-CV-2853-WSD-RGV |

## FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of movant Gregory Todd Bowden's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 72], the government's response, [Doc. 78], and Bowden's reply, [Doc. 79].  Following a March 5, 2013, evidentiary hearing, and having considered the motion, the evidence presented, and the parties' post-hearing briefs, [Docs. 97-99], the undersigned **RECOMMENDS** that Bowden's § 2255 motion be **DENIED**.

## I.  PROCEDURAL HISTORY

A federal grand jury returned an indictment charging Bowden with using a computer to attempt to persuade, induce, entice or coerce a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b).  [Doc. 10].  Represented by retained

counsel Franklin Hogue, Bowden pleaded not guilty and proceeded to a three-day jury trial that began on January 11, 2010.  [Docs. 16, 40-42, 49-51].  The jury found Bowden guilty, [Doc. 46], and the Court sentenced him to 250 months of imprisonment, [Doc. 56].

Bowden, still represented by Hogue, appealed, arguing that the Court erred by ruling that (1) Section 2422(b) applies to a defendant's contact with an intermediary rather than with a minor child, (2) an actual minor child is not required for § 2422(b) to apply, (3) Bowden's conversations were not protected by the First Amendment, (4) the specific offense characteristic at U.S.S.G. § 2G1.3(b)(3), use of a computer, applied to this case, and (5) the specific offense characteristic at U.S.S.G. § 2G1.3(b)(5), minor under twelve, applied to this case.  Br. of Appellant, United States v. Bowden, No. 10-12839-DD, 2010 WL 5145975, at *1, 6-15 (11th Cir. Sept. 10, 2010).  The Eleventh Circuit summarized the background facts as follows:

> In October 2008, an agent with a Federal Bureau of Investigation ("FBI") task force encountered Bowden in an internet chat room.  The FBI agent posed as "Tiffany," the mother of "Stephanie," a seven-year old girl.  After communicating about their personal lives, including details of their alleged sexual experiences, Bowden told "Tiffany" he was interested in a sexual relationship with a mother and her daughter and gave Tiffany his email address.

2

In early February 2009, "Tiffany" and Bowden began chatting online about arranging a meeting.  Bowden lived in Macon, Georgia. Bowden arranged to meet Tiffany and Stephanie on February 11, 2009 at a restaurant in Sandy Springs, Georgia and then go to Tiffany's apartment to engage in group sexual activities.  In his communications with Tiffany, Bowden took steps to ensure Tiffany understood that he wanted Stephanie to participate, that Tiffany had spoken to Stephanie about what would happen and that Tiffany would purchase "lube" for him to use with Stephanie.FN1

> FN1. At the time of his arrest, Bowden worked as a Deputy Sheriff at the Bibb County Sheriff's Office.  In an instant message, Bowden asked Tiffany whether she was a law enforcement officer and, when she reassured him that she was not, Bowden stated, "Just discussing it with you if you are a cop is bad, but to show up is worse."  In a communication the morning of February 11, 2009, Bowden told Tiffany he was "nervous, excited, and did not want to go to jail."

On February 11, 2009, law enforcement arrested Bowden when he parked in the parking lot of the agreed-upon restaurant.  After his arrest, Bowden admitted frequenting online chat rooms using the screen name utilized in the communications with Tiffany.   However, Bowden maintained that he did so to enjoy taboo subjects, role-playing and having sex with adults who pretended to be minors.  A subsequent search revealed child pornography on Bowden's computer.

United States v. Bowden, 420 F. App'x 907, 908-09 (11th Cir. 2011) (per curiam).  On

March 30, 2011, the Eleventh Circuit affirmed Bowden's conviction and sentence.  Id.

at 912.  On October 3, 2011, the Supreme Court denied Bowden's petition for writ of

certiorari.  Bowden v. United States, 132 S. Ct. 334 (2011).

3

On August 16, 2012, Bowden timely filed this pro se § 2255 motion, arguing that he received ineffective assistance of counsel when counsel (1) rejected the government's plea offer without first consulting with Bowden and later refused to follow Bowden's instructions to approach the government to negotiate a plea agreement, (2) failed to object to the Magistrate Judge's Report and Recommendation that Bowden's motion to dismiss the indictment be denied, (3) failed to argue that a 250-month sentence was substantively unreasonable, and (4) failed to object to unspecified factual statements in the presentence investigation report. [Doc. 72-1 at 4-7]. The government responds that Bowden's grounds for relief lack merit. [Doc. 12-26]. Bowden replies that an evidentiary hearing is necessary to resolve his claims and that he should be appointed new counsel. [Doc. 79].

The undersigned appointed counsel to represent Bowden, [Doc. 80], and conducted an evidentiary hearing to address ground one only, [Docs. 81, 95]. In his post-hearing brief, Bowden argues that counsel provided him ineffective assistance in connection with his decision to proceed to trial by failing to (1) inform Bowden that counsel believed the chances of prevailing at trial were very low, (2) advise Bowden regarding the possible negative consequences of testifying at trial, including the likelihood that Bowden would receive an obstruction of justice sentence enhancement,

4

and (3) discuss the sentencing guidelines in depth.  [Doc. 97].  The government responds that Bowden's evidentiary hearing testimony did not support ground one as stated in his § 2255 motion and that Bowden's new grounds are untimely and lack merit.  [Doc. 98 at 7-23].  Bowden replies that the Court should liberally construe ground one to include the claims raised at the evidentiary hearing, allow an amendment to conform to the evidence presented because the government did not object at the hearing, or find that the amendment relates back to the timely filed ground one.  [Doc. 99 at 3-8].  Bowden then reasserts the merits of those claims.  [Id. at 8-17].

## II. DISCUSSION

### A.    General Standards

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  United States v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted).

5

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Eagle v. Linahan, 279 F.3d 926, 938 (11th Cir. 2001) (applying Strickland to allegations of ineffective assistance of appellate counsel).  The analysis is two-pronged.  However, a court need not address both prongs "if the defendant makes an insufficient showing on one. Strickland, 466 U.S. at 697.   A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Id. at 690.   A court analyzing Strickland's first prong must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's performance was reasonable and adequate. . . .") (citation omitted).  Counsel is not incompetent so long as the particular approach taken could be considered sound strategy.  Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc); see also Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("[A] petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden.").

6

Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. In order to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

**B.    Ground One: Counsel's Assistance with Decision to Proceed to Trial**

**1.    Summary of Relevant Evidentiary Hearing Testimony**

Bowden testified that attorney Hogue met with him after his arrest and discussed the government's case and some discovery with him, including online chats with the agent, recorded phone calls with the agent on the day Bowden traveled to Sandy Springs, and child pornography found on Bowden's computer. [Doc. 95 at 5-6]. Hogue also discussed Bowden's defense that he was merely role playing and had no intent to have sex with the child. [Id. at 6]. Bowden further testified that he received a September 1, 2009, letter from Hogue advising Bowden that he had a decision to make regarding whether to proceed to trial or plead guilty. [Id. at 6-7, Govt. Ex. 2].

7

The letter stated that a computer expert's report confirmed "information the government [had] acquired concerning photographs," but also confirmed "other chat conversations of a fantasy nature to support a defense." [Govt. Ex. 2]. The letter also enclosed an email from the prosecutor that estimated the sentencing guideline ranges for a plea or trial, and Hogue stated that he had confirmed the guideline figures, which were "quite long in any scenario." [Id.]. According to the prosecutor's email, Bowden faced a guideline range of 235 to 293 months if convicted at trial versus a range of 168 to 210 months if he entered a plea. [Govt. Ex. 1]. The prosecutor stated that he would agree to a low-end recommendation if Bowden entered a negotiated plea. [Id.]. Hogue noted that Bowden had a "big decision" to make and that counsel's focus had remained on trial because his conversations with Bowden had "all pointed toward trial." [Govt. Ex. 2].

Bowden testified that he did not meet with Hogue after his receipt of the September 1st letter until November 19, 2009. [Doc. 95 at 9]. The two discussed trial preparation during this meeting, and Bowden did not recall a discussion regarding the September 1st letter. [Id. at 9-10]. Bowden testified that he asked Hogue about his chances at trial, and Hogue responded that "he did not believe in making predictions or giving odds." [Id. at 10]. Bowden stated that "at one point," he asked Hogue "if he

8

thought that [a guilty plea] would be [in Bowden's] best interest and [Hogue] told [Bowden] that it was a decision [Bowden] had to make." [Id.].

According to Bowden, Hogue told him during trial preparation "that the only chance that [he] had at trial was if [he were] to testify." [Id. at 11]. However, Bowden has no recollection of Hogue discussing the weaknesses of Bowden's testimony or "any dangers or down sides" to testifying. [Id.]. Additionally, Bowden stated that Hogue never advised him that he could receive an obstruction of justice enhancement if he testified and was convicted. [Id.]. Bowden then testified that Hogue did not discuss the sentencing guidelines regarding acceptance of responsibility or the "five-point swing possible in [Bowden's] guidelines between going to trial and pleading guilty." [Id.]. According to Bowden, Hogue never "explained how the guidelines would apply if [he] went to trial versus how the guidelines would have applied if [he] entered a guilty a plea." [Id. at 13-14]. Bowden testified that, had Hogue confronted him regarding the evidence that was inconsistent with his defense, told him that his chances of prevailing at trial were extremely low, and discussed the benefits of a plea, he would have pleaded guilty. [Id. at 11-13].

Next, Bowden asserted that his statement in his affidavit supporting his § 2255 motion that Hogue had advised Bowden that he had rejected the government's offer

9

before speaking with Bowden "was more of an impression that [Bowden] had formed regarding the fact that [they] never discussed the letter." [Id. at 12]. Bowden misunderstood Hogue's response to his inquiry regarding the possibility of a plea to be that the prosecution and the Court would not accept his plea because he had claimed his innocence all along. [Id. at 12-13]. Bowden now understands that he could have admitted his guilt and entered a plea. [Id. at 13].

On cross-examination, Bowden admitted that Hogue "brought up a big, thick book that had . . . the sentencing guidelines in them and pointed out this and this . . . [and] just showed [Bowden] a range of if [he went] to trial, if [he didn't]." [Id. at 15]. Bowden understood that if he pleaded guilty he faced a lower sentence than if he went to trial. [Id. at 15-16]. When asked about his contention in his § 2255 motion that Hogue refused to follow his instructions to go back to the government and try to negotiate a plea agreement, Bowden testified:

> When he told me that I could not plead guilty, that -- my understanding from that was they won't take a guilty plea, there's no need for us to go -- for me to go back because you can't plead guilty. I now understand that that was probably based on the fact that I had stated my innocence to him throughout and that that's what he was basing it on, but he did not explain to me anything about, well, if I go back and talk to them you have to accept responsibility to get any kind of agreement to plead guilty, he didn't explain anything of that to me.

10

[Id. at 18].  Bowden then admitted that his trial testimony–that he believed his online chats with the agent was merely role playing and that the minor daughter was just a fantasy–was untruthful.   [Id. at 19-20].   Bowden admitted that, contrary to his testimony at trial, he was guilty of the offense.  [Id. at 20].

Hogue identified the September 1, 2009, letter to Bowden and testified that he mailed the letter to Bowden and attached the prosecutor's email that outlined the estimated guideline ranges that Bowden would face subsequent to a plea or a trial.  [Id. at 24-27, 33].  Hogue stated that he had confirmed those estimated guideline ranges to be accurate and told Bowden that they "would need to discuss the decision whether to go to trial or negotiate a plea."  [Id. at 27].  Hogue, who has represented between 2,500 and 3,000 criminal defendants during the course of his career, testified that, while he had no independent memory of a discussion with Bowden regarding the government's offer, it was his customary practice to convey and discuss all plea offers with his clients and that he had never rejected a plea offer without first discussing it with his client.  [Id. at 23, 28-29].  Hogue next stated that, although he has no independent memory of doing so in Bowden's case, it was his custom to review the sentencing guidelines with all of his clients, including any enhancements that he believed may apply.  [Id. at 30].  Hogue stated that he does not have a customary practice regarding

11

advising clients as to the possible impact of an obstruction of justice enhancement because it "doesn't come up that often" and that he has no independent memory of having discussed that possibility with Bowden.  [Id. at 31].  Hogue also testified that he customarily tells his clients that "pleading guilty is the acceptance of responsibility for the crimes charged against the client" and advises them regarding the possible three-level guideline reduction for pleading guilty and accepting responsibility, but he has no independent memory of discussing this with Bowden.  [Id. at 32-33].  Hogue did not recall ever refusing to attempt to negotiate a plea for a client who requested that he do so and specifically did not recall refusing a request from Bowden to negotiate a plea in this case.  [Id. at 33-34].

On cross-examination, Hogue testified that throughout the proceedings, Bowden consistently denied that he intended to have sex with a minor child and showed no interest in pleading guilty.  [Id. at 37-38].  As a result of Bowden's commitment to his innocence, Hogue believed that the case was going to trial and never told Bowden, "you're going down hard, you need to let me negotiate a plea."  [Id. at 38].  Hogue did not think that Bowden's recorded conversations with the agent on the way to Atlanta were "absolutely inconsistent" with Bowden's role playing defense.  [Id. at 38-39].  Rather, Hogue thought that he could "absorb [those conversations] into the theory of

AO 72A
(Rev.8/82)

the defense and attempted to do so during trial." [Id. at 39]. Hogue stated that he and Bowden reviewed the evidence in the case and that he has no memory of advising Bowden that he did not "have a prayer." [Id.]. Hogue testified that he does not "push [his] clients into pleading guilty when they give [him] no indications that they're interested in doing that." [Id.].

Hogue encouraged Bowden to testify because that was the best way to present the strongest defense, i.e., that Bowden never intended to have sex with a minor child. [Id. at 39-40]. Hogue had no memory of advising Bowden that he might receive a sentencing enhancement for obstruction of justice if he testified. [Id. at 40]. Hogue did not expect the enhancement because many of his clients in federal cases testified, but none received an obstruction of justice enhancement. [Id. at 40-41]. Hogue testified that, although he knew there was a risk that a government witness would contradict Bowden on this point, he had no memory of telling Bowden that "when you tell the jury you didn't know child pornography was on your computer you're going to lose your case." [Id. at 42].

Hogue admitted that he did not visit Bowden after he wrote the September 1st letter until November 19th because he was out of town due to his father-in-law's illness and subsequent death, that he had no independent recollection of what they

13

discussed other than trial preparation, and that he "did not have high expectations of a jury acquittal." [Id. at 43-46]. Hogue thought they had "a tough road ahead." [Id. at 46].

### 2.   **Analysis**

At the hearing, Bowden retracted his claim that Hogue rejected the government's offer without first consulting with Bowden. [Doc. 95 at 12, 16]. Bowden also presented no evidence to support his original contention that Hogue refused to follow his instructions to attempt to negotiate a plea. [See generally id.]. Rather, Bowden testified that this assertion was based on his misunderstanding regarding Hogue's advice that he could not both maintain his innocence and plead guilty. [Id. at 18]. Accordingly, the Court will not further address those assertions.

Bowden now claims that Hogue ineffectively consulted with him regarding the government's plea offer and his decision to proceed to trial. This is a new claim raised for the first time at the March 5, 2013, evidentiary hearing. Bowden's conviction became final on October 3, 2011, when the Supreme Court denied his petition for writ of certiorari. Washington v. United States, 243 F.3d 1299, 1300 (11th Cir. 2001) (per curiam). Accordingly, the one-year statute of limitations expired on October 3, 2012. See 28 U.S.C. § 2255(f)(1) (providing that the one-year limitations period runs from

14

"the date on which the judgment of conviction becomes final"). Thus, Bowden's new claim is barred unless it relates back to his original claim under Federal Rule of Civil Procedure 15(c). Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000). A new claim relates back to the original motion only if it "arose out of the same conduct, transaction, or occurrence" as the original claim. Id. (citation omitted). The Court finds that Bowden's new claim–that Hogue ineffectively consulted with him regarding whether to plead guilty or proceed to trial–relates back to his original claim–that Hogue mishandled plea negotiations by failing to consult with Bowden or follow his instructions–because it arose from the "same conduct, transaction, or occurrence." Both claims concern counsel's alleged ineffective assistance with Bowden's decision to proceed to trial. Accordingly, the Court will address the merits of Bowden's new claim.

Defense counsel renders ineffective assistance by providing defendant incompetent advice to reject a favorable plea offer. Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). In addressing a claim that defense counsel provided a defendant ineffective assistance in connection with defendant's decision to plead guilty, the Eleventh Circuit explained that:

15

>[C]ounsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial. . . .  To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client.

Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam) (citations omitted).

Bowden points out that the Second Circuit has held that a defense counsel's failure to discuss the advisability of accepting or rejecting an offered plea bargain with his client, who professed his innocence and refused to consider the matter, constituted ineffective assistance where (1) the client had made "ruinous statements" after his arrest, (2) counsel felt "his client's decision to reject the plea bargain was suicidal," and (3) the plea bargain would have resulted in a one to three year sentence instead of the twenty year to life sentence the client received after trial.  Boria v. Keane, 99 F.3d 492, 494-97 (2d Cir. 1996).  However, the Second Circuit later limited its holding in Boria to the facts of that case, explaining that:

>On the one hand, defense counsel "'must give the client the benefit of counsel's professional advice on this crucial decision'" of whether to plead guilty. . . .  As part of this advice, counsel must communicate to the defendant the terms of the plea offer, . . . and should usually inform the defendant of the strengths and weaknesses of the case against him, as well

16

as the alternative sentences to which he will most likely be exposed[.] . . .

On the other hand, the ultimate decision whether to plead guilty must be made by the defendant. . . . And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer. . . .

Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because "[r]epresentation is an art," . . . and "[t]here are countless ways to provide effective assistance in any given case," . . . Counsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea (whether or not accompanied by an agreement with the government), whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision.

Purdy v. United States, 208 F.3d 41, 44-45 (2d Cir. 2000) (citations omitted).  In

Purdy, the Second Circuit concluded that counsel's failure "to give an ultimate opinion

as to the wisdom of a plea" did not amount to ineffective assistance because

(1) counsel fully "informed Purdy at length and on several occasions of the strength

of the government's case," (2) "[t]he sentence disparity facing Purdy (27 to 33 months

after trial and 18 to 24 months after a plea . . . ) was not nearly as vast as the one facing

Boria," and (3) Purdy's "decision not to plead guilty was based on a rational

calculation."  Id. at 47-48.

17

Bowden contends that Hogue provided him ineffective assistance in connection with his decision to proceed to trial because Hogue did not:  (1) offer his opinion that winning the case would be difficult and the chances of acquittal were low; (2) discuss the possible negative consequences of Bowden's decision to testify at trial, including that he could receive an enhancement for obstruction of justice if convicted and that the jury might disbelieve his entire testimony because he denied knowing that child pornography was on his computer after a computer forensics expert testified that it was accessed the night before Bowden's meeting with the undercover officer; (3) discuss the sentencing guidelines in depth; or (4) advise Bowden regarding the strengths of the government's case against him and weaknesses of his defense.[1]  [Doc. 97].

The Court does not find credible Bowden's contention that Hogue failed to discuss the sentencing guidelines in depth with him.  Bowden admitted on cross-examination that Hogue "brought up a big, thick book that had . . . the sentencing guidelines in them and pointed out this and this . . . [and] just showed [Bowden] a

---

[1] The government addresses Bowden's allegation that Hogue failed to advise him regarding the obstruction of justice enhancement as a separate ground for relief. [Doc. 98 at 21-23].  However, Bowden does not present this contention as a separate ground; rather, he raises it as a fact in support of his claim that Hogue ineffectively consulted with him regarding the government's plea offer.  [Doc. 99 at 14; see also Doc. 97 at 4-5, 7, 9].  Accordingly, the Court will not address this contention as a separate ground for relief.

range of if [he went] to trial, if [he didn't]." [Doc. 95 at 15]. Moreover, Bowden received a letter from Hogue, which enclosed an email from the prosecutor outlining the estimated guideline ranges that Bowden would face subsequent to a plea or a trial. [Id. at 6-7; Govt. Ex. 2]. In his September 1st letter to Bowden, Hogue stated that he had confirmed the guideline figures, which were "quite long in any scenario." [Govt. Ex. 2]. Thus, the Court finds that Hogue did discuss the sentencing guidelines with Bowden, and Bowden was aware of the likely disparity in sentencing if convicted after a trial versus entering a guilty plea, and he has not shown that Hogue's performance on this point was deficient.

Bowden's remaining complaints about Hogue's performance have more merit. It is essentially uncontested that Hogue never offered his opinion regarding Bowden's chances at trial, discussed in detail the strength of the government's case versus the weaknesses of Bowden's defense,[2] or advised Bowden regarding the possible negative consequences of his testimony, particularly the possibility that he would receive an

---

[2] Although Hogue did not engage in an explicit weighing of the evidence with Bowden, he did discuss with Bowden the government's evidence, including Bowden's online chats with the agent, recorded phone calls with the agent on the day Bowden traveled to Sandy Springs, and child pornography found on Bowden's computer, as well as Bowden's defense that he was engaged in fantasy and role-playing. [Doc. 95 at 5-6].

19

obstruction of justice enhancement.  However, even if the Court found that Hogue

failed to effectively consult with Bowden regarding his decision to reject the plea offer

and proceed to trial, Bowden still would not be entitled to relief because he has not

shown that he suffered prejudice.

> In order to establish prejudice based on a rejected plea offer:

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court ( i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler, 132 S. Ct. at 1385.  A defendant's "after the fact [statement] concerning his

desire to plead, without more, is insufficient to establish that but for counsel's alleged

advice or inaction, he would have accepted the plea offer."  Diaz v. United States, 930

F.2d 832, 835 (11th Cir. 1991).

There is no credible evidence in the record to show that Bowden was ever

interested in pleading guilty prior to trial.  Bowden was aware of the government's

strong evidence against him, including his graphic online chats, recorded telephone

conversations, and child pornography found on his computer, yet he maintained his

innocence throughout the proceedings and testified at trial that he believed his online chats were role-playing and that the minor child was a fantasy. [Doc. 95 at 18-19]. Hogue credibly testified, and the record otherwise reflects, that Bowden never showed any desire or interest in pleading guilty until after his conviction. [Id. at 37]. Indeed, at sentencing and on appeal, Bowden continued to maintain that he had only engaged in a fantasy and role-playing. [Doc. 65 at 33; Br. of Appellant, United States v. Bowden, No. 10-12839-DD, 2010 WL 5145975, at *3-4].

The Court does not find credible Bowden's testimony that he would have pleaded guilty had counsel more effectively consulted with him regarding this decision, particularly because he maintained his innocence throughout the proceedings until seeking relief in this § 2255 motion, and even provided what he now admits was false testimony at his trial to attempt to obtain an acquittal. His credibility is further undermined by the fact that his testimony at the evidentiary hearing differed in material respects from the grounds he raised in his § 2255 motion. Bowden's admittedly false testimony at trial and retraction of statements he made in the affidavit in support of his § 2255 motion indicate his willingness to alter the truth to obtain the outcome desired at the time of his testimony. Thus, the Court is unpersuaded by Bowden's latest claim that he would have pleaded guilty had he received better advice from his counsel

21

because the record belies his testimony and Bowden is not credible on this point. Accordingly, his self-serving testimony at the evidentiary hearing is insufficient to show prejudice, and Bowden is not entitled to relief on ground one. Diaz, 930 F.2d at 834; Paez-Ortiz v. United States, 200 F. App'x 946, 947 (11th Cir. 2006) (per curiam) (concluding that defendant had not shown prejudice based on counsel's failure to advise him to plead guilty because defendant maintained his innocence throughout the proceedings and there was no clear evidence that he "ever expressed a desire or intent to plead guilty before he was convicted"); see also Welch v. United States, 370 F. App'x 739, 742-43 (7th Cir. 2010) (rejecting a claim of ineffective assistance of trial counsel for failing to pursue a guilty plea where defendant adamantly maintained his innocence and consistently expressed his desire to have a jury trial); Ray v. Wolfenbarger, No. 08-cv-11415, 2011 WL 839173, at *8 (E.D. Mich. Mar. 7, 2011) ("Where a petitioner presses his innocence even after trial, courts generally find little likelihood that the petitioner would have pleaded guilty if given constitutionally adequate advice.") (citing Welch, 370 F. App'x at 743).

22

**C.**   **Ground Two: Counsel's Failure to Object to Recommendation to Deny Motion to Dismiss Indictment**

Bowden also contends that counsel was ineffective for failing to object to the Magistrate Judge's Report and Recommendation that Bowden's motion to dismiss the indictment be denied.  [Doc. 72-1 at 6].  The government responds that counsel's failure to object was reasonable.  [Id. at 19-22].  Bowden asserted three grounds for dismissal: (1) he could not violate § 2422(b) though contact with an intermediary who was not the child; (2) it was legally impossible for him to commit the crime charged because no actual victim existed; and (3) his conversations were protected by the First Amendment.  [Doc. 24 at 3-10].  The Report and Recommendation found that each of these arguments was foreclosed by Eleventh Circuit precedent.  [Doc. 27 at 9-12].  Counsel did not appeal the ruling to the District Court, but raised the issue on direct appeal, and the Eleventh Circuit agreed that Bowden's arguments were foreclosed by its precedent.  Bowden, 420 F. App'x at 910 & n.3.

As the Magistrate Judge, the District Court, [see Doc. 32 at 4-7], and the Eleventh Circuit all found, Bowden's arguments supporting his motion to dismiss the indictment were foreclosed by circuit precedent.  See United States v. Rothenberg, 610 F.3d 621, 626 (11th Cir. 2010) ("It is . . . the clearly established law of the circuit that

to prove an attempted exploitation offense under 18 U.S.C. § 2422(b), the Government does not have to prove the existence or identity of a specific minor victim; a fictitious minor will suffice so long as the defendant understood and believed that a minor was involved."); United State v. Lee, 603 F.3d 904, 912-13 (11th Cir. 2010) (explaining that a defendant may be convicted under § 2422(b) "even though he communicated only with an adult intermediary"); United States v. Hornaday, 392 F.3d 1306, 1311 (11th Cir. 2004) (rejected as frivolous defendant's claim that engaging in conversations with an undercover officer posing as a minor child violated his First Amendment rights and explaining that "[s]peech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime").   Accordingly, counsel cannot be faulted for failing to raise a meritless objection.  See United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (per curiam) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client."); Payne v. United States, No. 2:09cv1040-MHT-WC, 2012 WL 666002, at *6 (M.D. Ala. Feb. 1, 2012) (stating that where a defendant would have lost on an objection to a magistrate judge's adverse recommendation had it been made, he cannot show prejudice based on counsel's failure to object), report and recommendation adopted by, 2012 WL 652091, at *1 (M.D. Ala. Feb. 29, 2012).

**D.    Ground Three: Counsel's Failure to Argue that Sentence was Substantively Unreasonable**

Next, Bowden contends that counsel was ineffective for failing to argue that his 250-month sentence was substantively unreasonable.   [Doc. 72-1 at 6].   The government responds that Bowden's sentence was reasonable and that he has failed to show prejudice.   [Doc. 78 at 22-25].

Had Bowden's attorney raised this issue on appeal, the Eleventh Circuit would have reviewed it under a deferential abuse of discretion standard and been guided by the factors set forth in 18 U.S.C. § 3553(a).  Gall v. United States, 552 U.S. 38, 41 (2007) ("[C]ourts of appeals must review all sentences–whether inside, just outside, or significantly outside the Guidelines range–under a deferential abuse-of-discretion standard."); United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009) ("The district court must evaluate all of the § 3553(a) factors when arriving at a sentence, . . . but is permitted to attach 'great weight' to one factor over others." (citations omitted)). "These factors include the available sentences, the applicable Guideline range, the nature and circumstances of the offense, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and provide the defendant with needed medical care."   United States v.

Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005) (per curiam) (citing § 3553(a)).  The district court is not required "to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).

In this case, the Court determined that Bowden's sentencing guideline range was 292 to 365 months of imprisonment.  [Doc. 65 at 11].  Defense counsel sought a downward variance, arguing that the 120-month statutory minimum was sufficient to address the nature and circumstances of the offense, the history and characteristics of the defendant, and the purposes of the § 3553(a) sentencing factors.  [Id. at 21-25; Doc. 52 at 1, 5-11].  At sentencing, Bowden's pastor and father-in-law addressed the Court on his behalf.  [Doc. 65 at13-17 ].  Additionally, the Court indicated that it had considered letters submitted by defense counsel.  [Id. at 11].  In explaining its sentencing determination, the Court referenced the history and characteristics of Bowden, [id. at 41-42], the nature of the offense, [id. at 35, 42], the need for deterrence, [id. at 36], the need for the sentence imposed to reflect the seriousness of the offense and to protect the public, [id. at 37-39], and the need to provide Bowden with needed correctional treatment, [id. at 37-38].  After articulating its consideration

of these § 3553(a) factors, the Court sentenced Bowden to 250 months of imprisonment, 42 months below the guideline range.  [Id. at 42].

Given the Court's careful articulation of its sentencing determination, the downward variance from the sentencing guideline range, and the deferential standard of review, counsel's failure to challenge the substantive reasonableness of Bowden's sentence did not amount to deficient performance or result in prejudice.  See Smith v. Murray, 477 U.S. 527, 536 (1986) ("[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy.") (internal quotation marks and citation omitted).  Accordingly, Bowden is not entitled to relief on this ground.

### E.    Ground Four: Counsel's Failure to Object to Facts Stated in PSI

Finally, Bowden complains that counsel objected "to the three level enhancement" but did not object to unspecified factual statements in the presentence investigation report.  [Doc. 72-1 at 6].  Bowden provides no argument to support this ground, does not identify the enhancement to which he refers or the facts to which he maintains counsel should have objected, and has not articulated how he was prejudiced by counsel's omissions.  Other than his bald assertion that counsel was ineffective, Bowden has not shown deficient performance by counsel or prejudice.  See Wilson v.

United States, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient." (citation omitted)).

### III. CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Based on the foregoing discussion of Bowden's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

28

## IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that this 28 U.S.C. § 2255 motion to vacate sentence, [Doc. 72], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO RECOMMENDED**, this 8th day of October, 2013.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

29